## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

James A. Combs, Jr.
and A. L. Norton

v.

Ronald G. Chamer
and Cynthia Chamer

November 22, 1985

By JUDGE JOHN A. JAMISON

This action is styled a "Bill of Injunction", filed by the complainants against the respondents to restrain the latter from constructing a pier adjacent to complainants' property on Lake Anna, but separated from the Lake by a strip of land owned in fee simple by Virginia Electric and Power Company.

The court heard testimony from the parties and their witnesses, after counsel for each party had made comprehensive opening statements. After completion of the hearing, the court called for written arguments from counsel. These have been received and given careful study, along with five pages of bench notes by the court, the court file with exhibits including plats, pictures, drawings, a property deed, a construction agreement, as well as the more pertinent agreement between one of the plaintiffs, James Arthur Combs, Jr., and Lee Alfred Williams and others. This agreement is recorded in the Clerk's Office of this Court in Deed Book 459, at Page 178. The pertinent provision in this agreement which the court finds to be vital in deciding in this case reads as follows:

> The parties further agree that each individual lot owner shall have exclusive control and domination, free of the adjacent lot owners, to maintain such permissable piers, docks and improvements on the shore line as said lot owner may, in his *uncontrolled discretion*, desire to do. (italics supplied)

In the next paragraph the parties further agree that "this agreement shall be binding upon their heirs, devisees, assigns or grantees."

Mr. Combs later took title to all of the affected shore line property, (exclusive of Vepco's actual waterfront). Mr. Norton and Mr. and Mrs. Chamer are his grantees and are bound by the foregoing provisions of the agreement.

Two questions arise, however. What are "permissable piers"? Secondly, does the pier constructed by Mr. Chamer violate the terms of Section 62.1-164 of the Virginia Code so as to "obstruct non-commercial navigation or injure the private rights of any person, or encroach on any private landing so as to prevent the free use thereof," thus entitling the complainants to relief by the court. The word "permissable" in the agreement could mean only the permission required to be obtained from the County and from Vepco. Because they are bound by the agreement, Messrs. Combs and Norton now have no authority to grant permission because of the all-inclusive tenor of the agreement's wording quoted above. Both Spotsylvania County and Vepco have granted such permission to Mr. Chamer to build the pier and the agreement allows such construction as he "may in his uncontrolled discretion desire to do." Of course, such desire would be subject to the restrictions of Section 62.1-164, *supra.* However, the evidence at the hearing, coming from George O'Connell, the Vepco reservoir supervisor, supports the position that navigation is not obstructed. Regarding Mr. Jarrell's doubt concerning Mr. O'Connell's competence to give such testimony, it must be remembered that he has been employed in his present field for twelve years and his lengthy experience in his specialized duties entitle his testimony to great credibility. Likewise, Harold Gardner, well known as an experienced Spotsylvania real estate broker and appraiser with considerable experience in Lake Anna properties, was of the opinion that the pier in question would not be economically injurious to the complainants. He states that all nearby lot owners can see "overtop" the structures on the lake, because of the much higher elevation of the houses at this point on the lake. He testified further that the lakefront owners "expect to have to see piers on their own and other property owners' land." Both he and Mr. O'Connell testified that the Chamer pier, despite its length, still "sets back" from the

Combs and Norton piers and suggested that their piers might be said to detract from Chamer's enjoyment of his pier.

Mr. Gardner stated specifically that the Chamer pier does not detract from the value of the Norton property, repeating that the house is "very high, and has trees in front of it."

Mr. Kilner testified that he was a pier builder and in his opinion any crane which could be brought in would have only a 40-foot boom and could not be used to dredge out enough bottom to allow Mr. Chamer to use his boat on a shorter pier as has been suggested by plaintiffs as being acceptable to them. Mr. O'Connell also expressed doubt that dredging could be done for anything like a reasonable price.

One of the prospects feared by the complainants was that Mr. Chamer expects to build a boathouse at the end of his 80-foot dock. Mr. Lloyd, the other appraiser, in testifying for the complainants, held an opinion contrary to Mr. Gardner's. He testified that there would indeed be a reduction in value of the plaintiffs' property resulting from the pier construction.

I can certainly see how the construction of any piers on such an attractive body of water as this must have affected its unspoiled condition. The esthetics of the situation would be a paramount concern for any land similarly situated, yet it is well settled in the law that mere loss of an attractive view is not remediable despite unfortunate results.

There is good reasoning in Mr. Maupin's argument that the complainants do not own land "upon a watercourse" and therefore have no riparian rights in the water as contemplated by Section 62.1-164. Such rights are vested solely in Vepco which has given permission for the construction of the offending pier. Although Mr. Maupin insists that Vepco should have been made a party defendant in order for the above Code Section to have been invoked, that is a moot point now because Vepco has no objection to the pier construction, in view of its issuance of the pier construction permit.

I realize that the court should give careful attention to the testimony of the complainants that their navigation rights have been infringed. There is no testimony which positively shows that they cannot get the boats past the Chamer pier to reach their own. Mr. Norton testified

that he does have problems when tacking his sailboat because of the wide area required for that maneuver. However, this is more of an inconvenience than an actual obstruction to navigation.

In an equitable situation such as this, the court must balance the rights of all parties concerned and that I have attempted to do, fully recognizing and understanding the chagrin of the complainants. The court must take into consideration the carte blanche authority to construct piers guaranteed by the agreement, and fully consider the protective purpose of Code Section 62.1-164 in balancing the equities.

For all the foregoing reasons, the petition to enjoin, or to abate, the construction of the pier and boathouse must be denied.